1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8    JAMSHID S. KASHANNEJAD,                         No. C-11-2228 EMC

9              Plaintiff,

10        v.                                         **ORDER GRANTING PLAINTIFF'S
                                                     EMERGENCY REQUEST FOR STAY**
11   UNITED STATES CITIZENSHIP AND
     IMMIGRATION SERVICES, *et al.*,                 **(Docket No. 27)**
12
              Defendants.
13   _____/

14

15

16        Plaintiff Jamshid S. Kashannejad has filed suit against, *inter alia*, Defendant United States

17   Citizenship and Immigration Services ("USCIS").  In his complaint, Mr. Kashannejad contests the

18   USCIS's "unnoticed, unilateral" decision in 2006 to administratively close his application for

19   adjustment of status from lawful temporary resident ("LTR") to lawful permanent resident ("LPR").

20   Compl. at 1.  The primary relief sought by Mr. Kashannejad is a court order compelling USCIS to

21   facilitate his return to the United States and to grant him LPR status.  Alternatively, Mr.

22   Kashannejad asks the Court to order USCIS to facilitate his return to the United States, not to arrest

23   or detain him upon his return to the United States, and to promptly adjudicate his application for

24   adjustment of status.

25        Mr. Kashannejad has filed a motion for partial summary judgment in which he asks the Court

26   to "allow him to return to the United States to further pursue his application for adjustment to LPR."

27   Docket No. 16 (Mot. at 3).  On August 24, 2011, *i.e.*, approximately a month after Mr. Kashannejad

28   filed his motion for partial summary judgment, USCIS issued a notice of intent to terminate his

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   status as a LTR.  *See* Docket No. 26 (Ex. 1).  Mr. Kashannejad was given a month, *i.e.*, until

2   September 23, 2011, to respond to the notice.  *See id.*  According to Mr. Kashannejad, he was not

3   aware of this notice until Defendants filed their motion to dismiss/cross-motion for summary

4   judgment on August 31, 2011.  *See* Docket No. 27 (Mot. at 1).  On September 2, 2011, Mr.

5   Kashannejad filed the currently pending "emergency request for stay," in which he asks the Court to

6   enjoin Defendants from pursuing the termination of his LTR status until after the Court rules on his

7   motion for summary judgment, which is currently set for hearing on October 14, 2011.  Defendants

8   have opposed the request for a stay.  Having considered the parties' briefs and accompanying

9   submissions, the Court hereby **GRANTS** Mr. Kashannejad's motion.

10                          **I.    DISCUSSION**

11  A.      Legal Standard

12          According to Defendants, the Court should evaluate Mr. Kashannejad's request for a stay

13  pursuant to the test laid out by the Supreme Court in *Nken v. Holder*, 129 S. Ct. 1749 (2009).

14  Defendants acknowledge that *Nken* involved a request for a stay of a removal proceeding, whereas

15  here Mr. Kashannejad is only asking to stay the LTR termination proceedings.  Nonetheless,

16  Defendants argue, the situation here is sufficiently analogous to that in *Nken* that the same test

17  should be applied.  Mr. Kashannejad has made no argument to the contrary.  Indeed, his contention

18  that he is likely to succeed on the merits of his summary judgment motion suggests that he endorses

19  the *Nken* test as well.  The Court also agrees that the *Nken* test is appropriate here, where essentially

20  Mr. Kashannejad is seeking temporary injunctive relief.  Accordingly, the Court shall evaluate Mr.

21  Kashannejad's motion to stay the LTR termination proceedings pursuant to the *Nken* test.

22          In *Nken*, the Supreme Court stated that four factors should be considered when a court

23  evaluates a request to stay a removal:

24              (1) whether the stay applicant has made a strong showing that he is
                likely to succeed on the merits; (2) whether the applicant will be
25              irreparably injured absent a stay; (3) whether issuance of the stay will
                substantially injure the other parties interested in the proceeding; and
26              (4) where the public interest lies.

27  *Id.* at 1761.

28

United States District Court

For the Northern District of California

As to the first factor, the Ninth Circuit has noted that an applicant "need not demonstrate that it is more likely than not that [he] will win on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Rather, "the idea is that in order to justify a stay, [an applicant] must show, at a minimum, that [he] has a substantial case for relief on the merits." *Id.* at 968. As for the second factor, the Ninth Circuit has stated that "an alien must demonstrate that irreparable harm is *probable* if the stay is not granted." *Id.* (emphasis in original). The Ninth Circuit has also stated that

> a noncitizen must show that there is a reason specific to his or her case, as opposed to a reason that would apply equally well to all aliens and all cases, that removal would inflict irreparable harm – for example, that removal would effectively prevent her from pursuing her petition for review, or that, even if she prevails, she could not be afforded effective relief.

*Id.* at 969. "As for the third and fourth factors[,] . . . they merge where, as is the case here, the government is the opposing party." *Id.* The Ninth Circuit has cautioned that, although a stay applicant has "the ultimate burden of justifying a stay of removal, the government is obliged to bring circumstances concerning the public interest to the attention of the court." *Id.* at 970.

Finally, with respect to all four factors above, the Ninth Circuit has affirmed the use of a sliding scale, *i.e.*, a stay applicant

> must show that irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the [applicant's] favor. . . . "[T]hese standards represent the outer extremes of a continuum, with the relative hardships the parties providing the critical element in determining at what point on the continuum a stay pending review is justified."

*Id.*

B.    Likelihood of Success on the Merits

As noted above, Mr. Kashannejad is only seeking a stay of the LTR termination proceedings pending a decision on his motion for partial summary judgment. Furthermore, in his motion for partial summary judgment, Mr. Kashannejad is not asking to be awarded LPR status or to have a ruling on his application for adjustment of status; rather, he is only asking to be allowed to return to the United States. Given the limited nature of the relief sought – both in the motion to stay and the

1   motion for partial summary judgment – the Court deems it proper to limit its consideration of the

2   likelihood of success on the merits.  More specifically, the Court shall evaluate only whether Mr.

3   Kashannejad is likely to prevail on his motion for partial summary judgment (and not the underlying

4   complaint), in which he seeks a Court order permitting him to return to the United States.

5          With this limited inquiry, some of Defendants' arguments are not relevant.  For example,

6   Defendants contend that Mr. Kashannejad cannot establish a likelihood of success on the merits

7   because there can be no judicial review where there is no final agency action and, here, there is no

8   final agency action because all that USCIS has done is issue a notice of intent to terminate.  But,

9   given the limited inquiry, the Court is not making any evaluation as to whether the USCIS is

10  justified in terminating Mr. Kashannejad's LTR status.  Rather, it is simply considering whether Mr.

11  Kashannejad should be permitted entry back into the United States when his LTR status has, at this

12  point, only been administratively closed, and not formally terminated.

13         As to this specific issue, it is Mr. Kashannejad's position that he should have been allowed

14  back into the United States back in October 2010 because he had only left the country in late August

15  2010 for a brief trip to Iran to deal with a family emergency.  Mr. Kashannejad argues that an alien

16  with LTR status is permitted under the *Fleuti* doctrine, *see Rosenberg v. Fleuti*, 374 U.S. 449

17  (1963), to travel abroad in such a circumstance.

18         In *Fleuti*, the Supreme Court addressed the issue of whether a LPR's return to the United

19  States after a brief trip abroad constituted an "entry" within the meaning of 8 U.S.C. § 1101(a)(13)

20  as it existed prior to the effective date of the Illegal Immigration Reform and Immigrant

21  Responsibility Act of 1996 ("IIRIRA").  Section 1101(a)(13) provided in relevant part that

22              "[t]he term 'entry' means any coming of an alien into the United
                States, from a foreign port or place or from an outlying possession,
23              whether voluntarily or otherwise, *except* that an alien having a *lawful
                permanent residence* in the United States shall not be regarded as
24              making an entry into the United States for the purposes of the
                immigration laws if the alien proves to the satisfaction of the Attorney
25              General that his departure to a foreign port or place or to an outlying
                possession was not intended or reasonably to be expected by him or
26              his presence in a foreign port or place or in an outlying possession was
                not voluntary."

27

28

*Id.* at 452 (quoting § 1101(a)(13) (emphasis added)).  The Supreme Court concluded that "an innocent, casual, and brief excursion by a [lawful permanent] resident alien outside this country's borders may not have been 'intended' as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an 'entry' into the country on his return." *Id.* at 462.

*Fleuti*, of course, is not directly applicable to Mr. Kashannejad because he is not a lawful permanent resident.  Moreover, § 1101(a)(13) has now been modified as a result of IIRIRA.[1]  That being said, the basic right established in *Fleuti – i.e.*, that an innocent, casual, and brief trip outside the United States should not be counted against an alien for immigration purposes – has been extended to applicants for LTR status, at least under Ninth Circuit law.  In *Espinoza-Gutierrez v. Smith*, 94 F.3d 1270 (9th Cir. 1996), the Ninth Circuit noted that an applicant for legalization must establish continuous physical presence to obtain adjustment of status to a LTR but that, under subsection (a) of 8 U.S.C. § 1255a, an alien does not fail to meet this requirement by virtue of "'brief, casual, and innocent departures,'" which reflects Congress's intent to extend the *Fleuti*

---

[1] The statute now provides:

> (A)    The terms "admission" and "admitted" mean, with respect  to an alien, the lawful entry of the alien into the United    States after inspection and authorization by an immigration    officer.
>
> . . . .
>
> (C)    An alien lawfully admitted for *permanent residence* in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien – [*e.g.*,]
>
> > (ii)    has been absent from the United States for a continuous period in excess of 180 days, . . .
>
> > (v)    has committed an offense identified in section 212(a)(2) [8 U.S.C. § 1182(a)(2)], unless since such offense the alien has been granted relief under section 212(h) or 240A(a) [8 U.S.C. § 1182(h) or         1229b(a)] . . . .

8 U.S.C. § 1101(a)(13) (emphasis in original).

United States District Court
For the Northern District of California

1  doctrine to the legalization application process. *See id.* at 1272, 1274 (quoting 1255a(a)(3)(B)).

2  Section 1255a(a)(3)(B) still contains this provision post-enactment of IIRIRA.

3       While Mr. Kashannejad is not a legalization applicant – he is a LTR instead – § 1255a

4  contains a similar provision for LTRs under subsection (b).  Under § 1255a(b), for a LTR to obtain

5  adjustment of status to a LPR, he or she must establish continuous residence.  *See* 8 U.S.C. §

6  1255a(b)(1)(B).  An alien, however, "shall not be considered to have lost . . . continuous residence . .

7  . by reason of an absence from the United States permitted under paragraph (3)(A)."  *Id.* §

8  1255a(b)(1)(B)(ii).  Under paragraph (3)(A), certain travel abroad is authorized.  More specifically,

9  a LTR is permitted "to return to the United States after such brief and casual trips abroad as reflect

10 an intention on the part of the alien to adjust to lawful permanent resident status under paragraph (1)

11 and after brief temporary trips abroad occasioned by a family obligation involving an occurrence

12 such as the illness or death of a close relative or other family need."  *Id.* § 1255a(b)(3)(A).

13 Consistent with the Ninth Circuit's holding in *Espinoza-Gutierrez*, the use of the terms "brief" and

14 "casual" suggest an intent on the part of Congress to extend the *Fleuti* doctrine – in at least some

15 form – to LTRs.  Moreover, as the Ninth Circuit explicitly held in *Espinoza-Guitierrez*, §

16 1255a(b)(3)(A) "expressly applies to border-crossings."  *Espinoza-Gutierrez*, 94 F.3d at 1275.

17      In their response to Mr. Kashannejad's emergency motion, Defendants have failed to address

18 § 1255a(b)(3)(A).  Furthermore, Defendants' motion to dismiss or, in the alternative, cross-motion

19 for summary judgment also fails to address § 1255a(b)(3)(A).  Finally, Defendants do not make any

20 argument in either motion to challenge Mr. Kashannejad's claim that he traveled to Iran to attend to

21 a family emergency.  *See, e.g.*, Compl. (Kashannejad Decl. ¶ 7) (stating that, "[o]n August 21, 2010,

22 after consulting with some immigration practitioners and believing in good faith that my status is

23 still lawful temporary with the right or benefit of temporary trip outside the United States, I departed

24 the domicile of nearly 32 years for the first time to attend emergency family matters").  The Court

25 thus concludes that, at this juncture, Mr. Kashannejad has shown a strong likelihood of success on

26 the merits of his summary judgment motion.

27 C.    Probability of Irreparable Injury

28

6

United States District Court
For the Northern District of California

1     Of course, that Mr. Kashannejad has shown a strong likelihood of success is not the end of

2 the matter.  As indicated above, *Nken* requires that the stay applicant show that irreparable harm is

3 probable in the absence of the stay.

4     In his papers, Mr. Kashannejad makes two arguments regarding irreparable injury in the

5 event LTR termination proceedings were to move forward in his absence.  First, he argues that,

6 unless he is able to be physically present in the United States (the relief he seeks in his motion for

7 partial summary judgment), he will not be able to adequately defend himself in the LTR termination

8 proceedings.  Second, he argues that, if the LTR termination proceedings were resolved against him

9 prior to the Court's ruling on his motion for partial summary judgment, then he would be deprived

10 of judicial review with respect to the agency decision regarding his immigration status.

11     The Court is not persuaded that Mr. Kashannejad has made an adequate showing of

12 irreparable injury with respect to his first argument.  Mr. Kashannejad has not shown that it would

13 be any more difficult to marshal evidence in conjunction with the LTR termination proceedings than

14 it is to prepare the motions at bar.  That there is no e-filing procedure by which to submit evidence in

15 the LTR termination proceedings, *see* Docket No. 30 (Reply at 1), does not mean that it is unduly

16 difficult to defend from abroad.  He can effectuate the filing of papers from abroad.  Finally, Mr.

17 Kashannejad has not established he would be deprived of a right to present live testimony since he

18 has not demonstrated that, ordinarily, an alien would be allowed to provide oral testimony before the

19 USCIS as part of a termination proceeding.  He points to no provision allowing him to do so.  *See* 8

20 C.F.R. § 245a.2(u)(2)(I) (simply providing that "[t]he alien must be given an opportunity to offer

21 evidence in opposition to the grounds alleged for termination of his or her status"; that "[e]vidence

22 in opposition must be submitted within thirty (30) days after the service of the Notice of Intent to

23 Terminate"; and that, "[i]f the alien's status is terminated, the director of the regional processing

24 facility shall notify the alien of the decision and the reasons for the termination"); *see also* Docket

25 No. 29 (Opp'n at 7) (asserting that "Defendants have no statu[t]es or regulations which require a

26 hearing when terminating temporary resident status").

27     On the second argument, however, Mr. Kashannejad has made a sufficient showing of

28 probable irreparable injury.  As Mr. Kashannejad points out, 8 U.S.C. § 1255a(f)(4) provides that

"[t]here shall be judicial review of such a denial [*i.e.*, a denial of adjustment in status] only in the judicial review of an order of *deportation* . . . ." 8 U.S.C. § 1255a(f)(4)(A) (emphasis added); *see also Espinoza-Gutierrez*, 94 F.3d at 1278 (discussing § 1255a(f)). But if Mr. Kashannejad is not physically present in the United States, he cannot be subject to a deportation proceeding. Rather, he can be subject only to an exclusion proceeding. As the Ninth Circuit has held, "the plain meaning of [§ 1255a(f)(4)] precludes review of a legalization application in an exclusion proceeding." *Id.* Thus, in effect, failure to allow Mr. Kashannejad's return to the United States would have the effect of precluding him from judicial review should his status be terminated.

The Court emphasizes that, as discussed above, there is a strong likelihood of success that Mr. Kashannejad should have been permitted back into the United States in October 2010 pursuant to § 1255a(b)(3)(A) – *i.e.*, he should not have been denied a transportation letter based on the administrative closure. If Mr. Kashannejad had been permitted back into the United States, then USCIS still could have proceeded to terminate his LTR status but a judicial forum would then be available to him upon the issuance of a deportation order. In contrast, here, if the LTR termination proceedings are resolved against Mr. Kashannejad before the Court can rule on the motion for partial summary judgment, then no judicial forum will be available and Mr. Kashannejad will have lost his LTR status.

D.     Public Interest

Because Mr. Kashannejad has demonstrated that irreparable harm is probable and that there is a strong likelihood of success with respect to his motion for partial summary judgment, he need only show that the public interest does not weigh heavily against a stay. *See Leiva-Perez v. Holder*, 640 F.3d at 970. Defendants argue that the public interest would not be served by a stay because, if Mr. Kashannejad were to be allowed to return to the United States, he would then be placed in removal proceedings. *See id.* (noting that "the government is obliged to bring circumstances concerning the public interest to the attention of the court"). While the immigration regulations do contemplate that, under certain circumstances, USCIS "may institute deportation or exclusion proceedings against a temporary resident alien without regard to the procedures [requiring, *e.g.*, a notice of intent to terminate]," 8 C.F.R. § 245a.2(u)(2)(ii), that does not mean that the public interest

1  would be disserved by a stay.  Indeed, given that there is strong likelihood of success on Mr.

2  Kashannejad's motion for partial summary judgment, the public interest would arguably be served

3  by a stay as that would ensure that § 1255a(b)(3)(A) would be properly enforced.

4  E.        Stay

5          For the foregoing reasons, the Court concludes that Mr. Kashannejad has adequately satisfied

6  the *Nken* test and therefore grants his motion to stay the LTR terminating proceedings pending the

7  Court's ruling on his motion for partial summary judgment, which is currently set for hearing on

8  October 14, 2011.  The Court underscores that, at this juncture, it is only making an assessment of

9  the likelihood of success of Mr. Kashannejad's motion for partial summary judgment, in which the

10  only relief he seeks is a return to the United States.  The Court is not making any evaluation as to the

11  likelihood of success with respect to the other relief requested in his complaint, *e.g.*, the request for

12  an order granting him LPR status, for an order barring Defendants from arresting or detaining him

13  upon his return to the United States, and for an order compelling Defendants to promptly adjudicate

14  his application for adjustment of status.

15                          **II.    CONCLUSION**

16          Mr. Kashannejad's emergency motion to stay the LTR termination proceedings is granted.  More

17  specifically, the LTR termination proceedings are stayed pending this Court's ruling on Mr.

18  Kashannejad's motion for partial summary judgment.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

9

United States District Court

For the Northern District of California

1        With respect to that motion for partial summary judgment, as well as Defendants' motion to

2   dismiss/cross-motion for summary judgment, the Court hereby orders Mr. Kashannejad to submit a

3   statement by September 29, 2011, as to whether he can make an appearance by telephone to participate

4   in the hearing on October 14, 2011.  If not, then the Court may vacate the hearing and deem the motion

5   submitted or it may proceed with the hearing with only Defendants present.  If Mr. Kashannejad can

6   make a telephonic appearance, then, no later than October 10, 2011, he must contact Betty P. Lee, the

7   Courtroom Deputy, at (415) 522-2034 to make arrangements for that appearance.  The Court notes that

8   it cannot initiate a call to Iran at the Court's cost.

9        This order disposes of Docket No. 27.

10

11       IT IS SO ORDERED.

12

13  Dated:  September 15, 2011

14

15  _____
    EDWARD M. CHEN

16  United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28