UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMSHID S. KASHANNEJAD,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-11-2228 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 16, 26)** |

    Plaintiff Jamshid S. Kashannejad has filed suit against, *inter alia*, Defendant United States Citizenship and Immigration Services ("USCIS"). In his complaint, Mr. Kashannejad contests the USCIS's "unnoticed, unilateral" decision in 2006 to administratively close his application for adjustment of status from lawful temporary resident ("LTR") to lawful permanent resident ("LPR"). Compl. at 1. The primary relief sought by Mr. Kashannejad is a court order compelling USCIS to facilitate his return to the United States and to grant him LPR status. Alternatively, Mr. Kashannejad asks the Court to order USCIS to facilitate his return to the United States, not to arrest or detain him upon his return to the United States, and to promptly adjudicate his application for adjustment of status.

    Currently pending before the Court are two motions: (1) Mr. Kashannejad's motion for partial summary judgment and (2) Defendants' motion to dismiss for lack of jurisdiction or, in the alternative, cross-motion for summary judgment.

## I. FACTUAL & PROCEDURAL BACKGROUND

The evidence submitted by the parties reflects as follows. Where there are factual disputes, they are so noted.

Mr. Kashannejad obtained LTR status on January 13, 1988. *See* Docket No. 1 (Kashannejad Decl. ¶ 2); Docket No. 34 (Ex. B) (letter, dated July 19, 1996, from INS, stating that, "[o]n 01/13/88, subject's status was adjusted to that of temporary resident pursuant to Section 245a of the I. & N. Act"). According to Mr. Kashannejad, he thereafter submitted an application for adjustment of status to LPR. *See* Docket No. 34 (Ex. C). Defendants claim that no application was ever received.[1] *See* Docket No. 26 (Lee Decl. ¶¶ 6-7). Defendants further question the bona fides of the application that Mr. Kashannejad has submitted for the Court's review because it contains no INS barcoding, has no fee stamp, and does not contain the alien registration number for Mr. Kashannejad. *See* Docket No. 26 (Lee Decl. ¶ 7). In addition, Defendants point out that the application is dated January 27, 1988, but the form reflects that it was not released for use until November 9, 1988, *i.e.*, more than nine months later. *See* Docket No. 26 (Lee Decl. ¶ 8). Similarly, Defendants note that, in the application – dated January 27, 1998 – Mr. Kashannejad claims that he has not been arrested since November 11, 1988, which is again more than nine months later. In response, Mr. Kashannejad claims that he simply made an error in dating the application – *i.e.*, the year should have been 1989 instead of 1988. *See* Docket No. 30 (Reply at 4).

After Mr. Kashannejad obtained LTR status, he was arrested and convicted of several crimes. Defendants have provided evidence that:

///

///

///

---

[1] Under the Immigration and Naturalization Act ("INA") and accompanying regulations, LTR status may be terminated if "[t]he alien fails to file for adjustment of status from temporary resident to permanent resident on Form I-698 within forty-three (43) months of the date he/she was granted status as a temporary resident under § 245a.1 of this part." 8 C.F.R. § 245a.2(u)(1)(iv); *see also* 8 U.S.C. § 1255a(b)(2)(C). In the notice of intent to terminate that was sent to Mr. Kashannejad on August 24, 2011, USCIS identified this as one of the grounds for termination of Mr. Kashannejad's LTR status. *See* Docket No. 26 (Ex. 1) (notice of intent to terminate).

- On June 29, 1988, Mr. Kashannejad pled guilty to a violation of California Penal Code § 459 (commercial burglary). He was sentenced to one year and four months. (Case No. A040483 and, on appeal, Case No. B067993.) *See* Docket No. 26 (Ex. 2, at 3-6). Mr. Kashannejad has provided evidence that, in August 2010, a state court found him factually innocent of this crime and therefore sealed and destroyed the record. *See* Docket No. 31 (Ex. 1) (order).
- On June 1, 1989, Mr. Kashannejad pled guilty to a violation of California Penal Code §§ 488 and 666 (petty theft and punishment for subsequent conviction of petty theft after prior theft crime conviction). He was sentenced to thirty days. (Case No. 151659PO.) *See* Docket No. 26 (Ex. 2, at 1-2). In conjunction with the arrest for this crime, Mr. Kashannejad's LTR card was taken from him, and local law enforcement gave the card to the agency then-known as the Immigration and Naturalization Service ("INS"). *See* Docket No. 26 (Lee Decl. ¶ 4).
- On October 17, 1990, Mr. Kashannejad was convicted of three counts of violating California Penal Code § 459 (second-degree burglary) and two counts of violating § 487 (grand theft). He was sentenced to a total of four years and four months. (Case No. BA019486 and, on appeal, Case Nos. B055850 and S047576.) *See* Docket No. 26 (Ex. 2, at 7-12).
- On November 10, 1993, Mr. Kashannejad was convicted of one count of violating California Penal Code § 459 (second-degree burglary) and one count of violating § 487 (grand theft). He was sentenced to a total of three years. (Case No. NA016087 and, on appeal, Case Nos. B081414 and S053521.) *See* Docket No. 26 (Ex. 2, at 13-20).

In 1995, Mr. Kashannejad was incarcerated in state prison, presumably for one of the offenses above. Because he was convicted of a crime making him subject to deportation, INS lodged a detainer against him, "notifying prison authorities that [he] may be eligible for deportation upon completion of his sentence and asking them to notify the [INS] before the sentence expires." Docket No. 30 (Ex. E) (Order at 1). Mr. Kashannejad initiated a lawsuit against the INS in this Court, asking for expungement of the detainer because his state conviction was not final as his appeal was still pending. Judge Legge, the assigned judge in the federal case, agreed that, because the appeal was still pending, Mr. Kashannejad's conviction did not appear to be final for immigration purposes. Judge Legge thus ordered INS to show "why a writ of mandamus should not

issue ordering the expungement of the detainer." Docket No. 30 (Ex. E) (Order at 4).

In a response dated August 25, 1995, INS submitted that the action should be dismissed. INS noted, *inter alia*, that, since the OSC had been issued, Mr. Kashannejad had been released from custody – both from the state prison and INS. INS stated:

> On August 24, 1995, petitioner was released from the custody of INS. He cannot be served with an Order to Show Cause regarding deportability because of his lawful temporary resident status. INS is required to terminate, as a condition precedent to the commencement of deportation proceedings, the lawful resident status of an alien who commits a deportable offense after he has acquired temporary residence in this country.
>
> Because petitioner has been released from INS and state prison custody, and because INS cannot place petitioner in deportation proceedings, petitioner no longer has any reason to request expungement of the INS detainer. Accordingly, this action should be dismissed.

Docket No. 30 (Ex. F) (Reply at 3). In support of the above statements, INS cited *Matter of Medrano*, 20 I. & N. 216 (1990). There, the Board of Immigration Appeals stated that the immigration regulations "regarding termination of temporary residence clearly contemplate that the termination process will *precede* the commencement of deportation proceedings against an alien." *Id.* at 218 (emphasis added). *Medrano*, however, had been abrogated by regulation at the time that the INS relied on the case. *See* 60 Fed. Reg. 21039 (May 1, 1995); 8 C.F.R. § 245a.2(u)(2)(ii).[2]

---

[2] Section 245a.2(u)(2)(ii) provides that

    (A)    The Service may institute deportation or exclusion proceedings against a temporary resident alien without regard to the procedures set forth in paragraph (u)(2)(i) of this section:

        (1)    If the ground for deportation arises under section 241(a)(2)(A)(iii) of the Act (8 U.S.C. 1251(a)(2)(A)(iii)) [aggravated felony];

        (2)    If the ground for deportation arises after the acquisition of temporary resident status, and the basis of such ground of deportation is not waivable pursuant to section 245A(d)(2)(B)(ii) of the Act (8 U.S.C. 1255a(d)(2)(B)(ii)) [providing that certain provisions of 8 U.S.C. § 1182(a) may not be waived]; or

        (3)    If the ground for exclusion arises after the acquisition of temporary resident status and is not waivable pursuant to section 245A(d)(2)(B)(ii) of the Act (8 U.S.C. 1255a(d)(2)(B)(ii)).

4

That is, the regulation permitting deportation proceedings prior to termination of LTR status went into effect on May 31, 1995 – *i.e.*, prior to the date that the government erroneously represented to Judge Legge that "INS is required to terminate, as a condition precedent to the commencement of deportation proceedings, the lawful temporary resident status of an alien who commits a deportable offense after he has acquired temporary residence in this country." Docket No. 30 (Ex. F) (Reply at 4). Notably, Judge Legge appears to have relied on the above statements by the INS in dismissing the case. *See* Docket No. 30 (Ex. G) (Order at 2) (stating that Mr. Kashannejad's petition to expunge an INS detainer was moot, in part because "the INS determined that it would not initiate deportation proceedings against petitioner until after his lawful temporary resident status had been terminated").

Some fifteen years later, in August 2010, Mr. Kashannejad left the United States to attend to a claimed family emergency in Iran. *See* Docket No. 1 (Kashannejad Decl. ¶ 7). In October 2010, he attempted to return to the United States but was told that he could not enter without a transportation letter from a U.S. embassy. Mr. Kashannejad went to the U.S. embassy in Abu Dhabi, which on November 3, 2010, denied his request for a letter. *See* Docket No. 1 (Kashannejad Decl. ¶ 7). According to an e-mail from the embassy, "Our records indicate that your application for Status as Temporary Resident Under Section 245A of the Immigration and Nationality Act was administratively closed in January 2006," and so "our office cannot proceed with your request." The embassy directed Mr. Kashannejad to USCIS for "queries regarding your situation." Docket No. 30 (Ex. H) (e-mail).

Through a declaration, USCIS surmises that Mr. Kashannejad's file was administratively closed in January 2006 because, in July 1995, his previously approved application for LTR status (I-687) was loaded into a new electronic tracking system and assigned a receipt number. "At that time a receipt notice was mailed to Mr. Kashannejad but was returned as undeliverable. In January 2006,

---

(B) In such cases, the entry of a final order of deportation or exclusion will automatically terminate an alien's temporary resident status acquired under section 245A(a)(1) of the Act.

8 C.F.R. § 245a.2(u)(2)(ii).

5

the file on his I-687 was administratively closed in the system probably based on over 10 years of inactivity since the above notice was returned as undeliverable." Docket No. 26 (Lee Decl. ¶ 9).

Approximately six months later, in May 2011, Mr. Kashannejad initiated the instant lawsuit. *See* Docket No. 1 (complaint). As noted above, as stated in the complaint, the primary relief sought by Mr. Kashannejad is a Court order compelling USCIS to facilitate his return to the United States and to grant him LPR status. Alternatively, Mr. Kashannejad asks the Court to order USCIS to facilitate his return to the United States, not to arrest or detain him upon his return to the United States, and to promptly adjudicate his application for adjustment of status.

Soon after the case was filed, Mr. Kashannejad filed the currently pending motion for partial summary judgment. Because Mr. Kashannejad filed the motion prior to service of the complaint on Defendants, the Court deferred the briefing schedule and hearing on the motion. Approximately a week before Defendants' answer was due, USCIS issued to Mr. Kashannejad a notice of intent to terminate his LTR status. *See* Docket No. 26 (Ex. 1) (notice). By issuing the notice and giving Mr. Kashannejad an opportunity to respond, USCIS appears to be following the procedure for termination outlined in 8 C.F.R. § 245a.2(u)(2)(i) – and not instituting exclusion proceedings *prior* to termination of status under § 245a.2(u)(2)(ii). In the notice, USCIS identifies two grounds for termination of LTR status: (1) because Mr. Kashannejad had been convicted either of a felony or three or more misdemeanors and (2) because Mr. Kashannejad had failed to apply for adjustment to LPR status at the end of the forty-third month beginning after the date he was granted LTR status (*i.e.*, by August 13, 1991). *See* Docket No. 26 (Ex. 1) (notice) (citing 8 U.S.C. § 1255(b)(2)(B), (C)).

A week after the LTR termination proceedings were begun, Defendants filed the currently pending motion to dismiss or, in the alternative, cross-motion for summary judgment.

According to Mr. Kashannejad, he did not receive notice of the LTR termination proceedings until Defendants filed their motion. Subsequently, he filed an emergency motion, asking the Court to stay the LTR termination proceedings pending a ruling on his motion for partial summary judgment. The Court granted the motion, noting, *inter alia*, that Mr. Kashannejad had established a strong likelihood of success that he should have been permitted back into the United States in

October 2010 pursuant to 8 U.S.C. § 1255a(b)(3)(A), *see* Docket No. 32 (order), which provides that a LTR is permitted "to return to the United States after such brief and casual trips abroad as reflect an intention on the part of the alien to adjust to lawful permanent resident status under paragraph (1) and *after brief temporary trips abroad occasioned by a family obligation involving an occurrence such as the illness or death of a close relative or other family need*." 8 U.S.C. § 1255a(b)(3)(A) (emphasis added).

In response to the Court's order, Mr. Kashannejad filed a supplemental brief (unsolicited), clarifying that, in his motion for partial summary judgment, he sought not only a Court order permitting his return to the United States but also a Court order barring Defendants from initiating deportation proceedings against him upon his return until *after* his LTR status was (presumably) terminated. Mr. Kashannejad explained that he was entitled to the latter relief based on the representation that the INS had made to Judge Legge in August 1995 – *i.e.*, that it could not deport him until after his LTR status was terminated. The Court gave Defendants an opportunity to provide supplemental briefing in response to this specific argument.

## II. DISCUSSION

A. Legal Standard

    1. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move for dismissal of a complaint for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The Administrative Procedure Act ("APA") provides that an action taken by an agency is subject to review by a federal court if the action is "made reviewable by statute" or if there is a "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704. With respect to the latter, the Ninth Circuit has noted that, "[b]efore final agency action has occurred, an action against [the agency] is premature and a federal court lacks subject matter jurisdiction to hear [a] claim." *Rattlesnake Coalition v. United States EPA*, 509 F.3d 1095, 1105 (9th Cir. 2007).

    2. Rule 56

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

1 affidavits, if any, show that there is no genuine issue as to any material fact and that the moving
2 party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine
3 only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See*
4 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of
5 evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for
6 the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in
7 the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the
8 nonmovant's favor. *See id.* at 255.

9 Where the plaintiff has the ultimate burden of proof, he or she may prevail on a motion for
10 summary judgment only if he or she affirmatively demonstrates that there is no genuine dispute as to
11 every essential element of its claim. *See River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d
12 1458, 1462 (9th Cir. 1992). In contrast, where the plaintiff has the ultimate burden of proof, the
13 defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's
14 failure "to make a showing sufficient to establish the existence of an element essential to [the
15 plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

16 B. <u>Jurisdiction</u>

17 In their papers, Defendants spend much of their time arguing that the Court lacks jurisdiction
18 over the case because USCIS has now initiated LTR termination proceedings, and thus there
19 currently is no final agency action. At this juncture, however, Mr. Kashannejad is not asking to be
20 granted LPR status or even to have the LTR termination proceedings resolved in his favor. Instead,
21 he is simply asking for the opportunity to return to the United States – and not be placed
22 immediately into deportation proceedings – so that he can defend against the LTR termination
23 proceedings. Given the limited nature of the relief Mr. Kashannejad seeks, the Court need not make
24 "any evaluation as to whether the USCIS is justified in terminating [or initiating termination of] Mr.
25 Kashannejad's LTR status." Docket No. 32 (Order at 4). Rather, the Court is only considering (1)
26 whether Mr. Kashannejad should be permitted back into the United States and (2) whether USCIS or
27 another federal agency will be permitted to put Mr. Kashannejad into deportation proceedings upon
28 his return *prior* to termination of his LTR status, as provided for by 8 C.F.R. § 245a.2(u)(2)(ii). The

lack of any final agency action is therefore not a jurisdictional bar. Because there is no jurisdictional bar, the Court addresses each of the above issues in turn.

C. <u>Return to the United States</u>

This issue has largely been covered by the Court's order granting Mr. Kashannejad's emergency motion for a stay. *See* Docket No. 32 (order). As discussed in that order, Mr. Kashannejad should be permitted back into the United States based on 8 U.S.C. § 1255a(b)(3)(A), which provides that a LTR is permitted

> to return to the United States after such brief and casual trips abroad as reflect an intention on the part of the alien to adjust to lawful permanent resident status under paragraph (1) and *after brief temporary trips abroad occasioned by a family obligation involving an occurrence such as the illness or death of a close relative or other family need*.

8 U.S.C. § 1255a(b)(3)(A) (emphasis added).

In their papers, Defendants do not persuasively argue that Mr. Kashannejad should not be allowed to return to the United States. For example, Defendants suggest that Mr. Kashannejad should not be given a transportation letter because USCIS had administratively closed his temporary residence. *See* Docket No. 36 (Reply at 2); *see also* Docket No. 30 (Ex. H) (e-mail from embassy, stating that "[o]ur records indicate that your application for Status as Temporary Resident Under Section 245A of the Immigration and Nationality Act was administratively closed in January 2006"). But Defendants have not cited any authority establishing that an administrative closure actually terminates an alien's LTR status. *Cf. Arca-Pineda v. AG of the United States*, 527 F.3d 101, 104-05 (3d Cir. 2008) (stating that "'[a]dministrative closure is a procedural convenience that may be granted if both parties to the removal proceedings agree, but it does not constitute a final order'" and that "'administrative closure of a case temporarily removes a case from an immigration judge's calendar or from the Board's docket'"); *In re Gutierrez-Lopez*, 21 I. & N. Dec. 479, 480 (1996) (noting that "[a]dministrative closure of a case is used to temporarily remove a case from an Immigration Judge's calendar or from the Board's docket" and that "[a] case may not be administratively closed if opposed by either of the parties"; adding that "'[t]he administrative closing of a case does not result in a final order [and] is merely an administrative convenience which

allows the removal of cases from the calendar in appropriate situations'"). While an alien's LTR status may be terminated if he or she fails to timely file for adjustment of status to LPR, *see* 8 C.F.R. § 245a.2(u)(1)(iv), in such a circumstance, termination must follow the procedure outlined in 8 C.F.R. § 245a.2(u)(2)(i), *i.e.*, notice of intent to terminate, etc. Here, USCIS did not initiate this procedure until recently, *i.e.*, on August 24, 2011. Thus, at present, Mr. Kashannejad still has his LTR status.

Defendant also suggests that Mr. Kashannejad should not be permitted back into the country because he does not have his temporary resident card (Form I-688). As indicated above, that card was taken from him in 1989 in conjunction his arrest for a crime, and local law enforcement gave the card to the agency then-known as the INS. *See* Docket No. 26 (Lee Decl. ¶ 4). It is true that Mr. Kashannejad took some risk in traveling without this card. However, Defendants have not cited any authority that an alien who travels without his or her LTR card no longer has LTR status. The fact remains that the LTR termination proceeding remains pending and his LTR status still obtains.

Finally, Defendants argue that, contrary to what the Court suggested in its order granting the emergency motion to stay, Mr. Kashannejad should not be permitted back into the country under § 1255a(b)(3)(A. As noted above, under § 1255a(b)(3)(A), a LTR is permitted

> to return to the United States after such brief and casual trips abroad as reflect an intention on the part of the alien to adjust to lawful permanent resident status under paragraph (1) and after brief temporary trips abroad occasioned by a family obligation involving an occurrence such as the illness or death of a close relative or other family need.

8 U.S.C. § 1255a(b)(3)(A). To the extent Defendants contend that Mr. Kashannejad has failed to provide any evidence that his trip to Iran was *casual*, that is immaterial because Mr. Kashannejad is not invoking the first prong of § 1255a(b)(3)(A) ("brief and casual trips abroad as reflect an intention . . . to adjust to lawful permanent resident status"), but rather the second prong – "brief temporary trips abroad occasioned by a family obligation . . . or other family need." Defendants argue that Mr. Kashannejad's trip was not *brief*, but, under the circumstances, the Court concludes that, as a matter of law, Mr. Kashannejad's trip to Iran, which lasted just under two months (from

10

August 21, 2010, to mid-October 2010, *see* Docket No. 1 (Kashannejad Decl. ¶ 7)), qualifies as brief.[3]

In reaching this conclusion, the Court finds two cases particularly instructive. First, in *Jubilado v. United States*, 819 F.2d 210 (9th Cir. 1987), an LPR visited the Philippines for more than three months, but the Ninth Circuit, applying the *Fleuti* doctrine,[4] still held that he was not subject to exclusion proceedings upon his return to the United States because the purpose of the trip was to tie "his affairs and mov[e] the rest of his family to the United States, [which] demonstrate[d] [an] intent to preserve, not interrupt, his permanent resident status." *Id.* at 213. Second, in *Kamheangpatiyooth v. INS*, 597 F.2d 1253 (9th Cir. 1979), a case involving the continuous presence requirement for suspension of deportation rather than entry under the old INA § 101(a)(13), an LPR left the United States for a month during the Christmas semester break to visit his gravely ill mother in Thailand. Considering the *Fleuti* factors, the Ninth Circuit concluded that the LPR did not intend to relinquish the attachment to the United States which was demonstrated by his twelve years of residence. *See id.* at 1258.

The above cases indicate that the term "brief" needs to be interpreted flexibly and in context. Furthermore, in discussing the *Fleuti* doctrine, the Ninth Circuit has expressly noted that

> the "length of the absence is relevant, but not alone determinative."
> An absence may constitute an entry, even though its duration is brief, if its purpose is unlawful. On the other hand, a more lengthy absence may not be deemed an entry if its purpose is bona fide and consistent with permanent resident status.

*Jubilado*, 819 F.2d at 212 -13; *cf. Kamheangpatiyooth*, 597 F.2d at 1258 (stating that "[a]n absence of six or even 16 months does not interrupt the requisite continuity of physical presence as a matter of law"). Implicitly, this statement applies to aliens who have lawful status other than LPR. *Cf. Espinoza-Gutierrez*, 94 F.3d at 1275 (noting that an applicant for legalization must establish

---

[3] Section 1255a(b)(3)(A) does not define "brief."

[4] In *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), the Supreme Court held that, under 8 U.S.C. § 1101(a)(13) as it existed prior to the effective date of the Illegal Reform and Immigrant Responsibility Act of 1996 ("IRRIRA"), "an innocent, casual, and brief excursion by a [lawful permanent] resident alien outside this country's borders may not have been 'intended' as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an 'entry' into the country on his return." *Id.* at 462.

11

1 continuous physical presence to obtain adjustment of status to a LTR but that, under subsection (a)
2 of 8 U.S.C. § 1255a, an alien does not fail to meet this requirement my virtue of "'brief, casual, and
3 innocent departures,'" which reflects Congress's intent to extend the *Fleuti* doctrine to the
4 legalization application process).

The Court concludes that, as a matter of law, Mr. Kashannejad's trip was brief. The two-month visit that Mr. Kashannejad made to Iran pales in comparison to his more than thirty years of living in the United States.[5] Moreover, his stated purpose was to tend to an emergency family need which is not inconsistent with his LTR status.

Finally, Defendants contend that, even if Mr. Kashannejad's trip was sufficiently brief for purposes of § 1255a(b)(3)(A), Mr. Kashannejad still has not met other requirements of the statute – in particular, because he has not provided any evidence that he traveled to Iran for a family matter. This is not correct. In a declaration attached to his complaint, Mr. Kashannejad testified that he left for Iran "to attend emergency family matters." Docket No. 1 (Kashannejad Decl. ¶ 7). While this statement is somewhat conclusory, it still is evidence – and Defendants have not offered any evidence to indicate that that statement is not true. More important, there are facts from which it may be inferred that the statement is true – *i.e.*, Mr. Kashannejad left the United States for only two

---

[5] Defendants suggest that a brief trip is one that does not exceed thirty days. In support of this argument, they point to 8 C.F.R. § 245a.2, which defines a "brief, casual and innocent absence" with respect to aliens who are applying for LTR status. There, such an absence is defined as

> a departure authorized by the Service (advance parole) subsequent to May 1, 1987 of not more than *thirty (30) days* for legitimate emergency or humanitarian purposes unless a further period of authorized departure has been granted in the discretion of the district director or a departure was beyond the alien's control.

8 C.F.R. § 245a.2(l)(2) (emphasis added). However, this provision does not apply to Mr. Kashannejad who already has LTR status.

Moreover, there are other statutes that indicate that a brief trip can be longer than thirty days in other contexts. *See, e.g.*, 8 U.S.C. § 1101(a)(13)(C)(ii) (providing that "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien . . . has been absent from the United States for a continuous period in excess of *180 days*") (emphasis added); *id.* § 1229b(d)(2) (providing that "[a]n alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) and (b)(2) [cancellation of removal and adjustment to LPR status] if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days").

1 months which, as noted above, stands in sharp contrast to the more than thirty years that he has lived
2 here.

3 Accordingly, to the extent Mr. Kashannejad asks to be permitted to return to the United
4 States, the Court grants that request for relief.

### D. Termination of LTR Status Prior to Initiation of Deportation Proceedings

The second issue that the Court must address is whether USCIS or another federal agency should be permitted to put Mr. Kashannejad immediately into deportation proceedings upon his return, *i.e.*, *prior* to termination of his LTR status through the procedure outlined by 8 C.F.R. § 245a.2(u)(2)(i) (*i.e.*, notice of intent to terminate, etc.). At the hearing, Defendants indicated that, if Mr. Kashannejad were to return to the United States, then a federal agency not named in his complaint likely would put him into deportation proceedings prior to termination of his LTR status pursuant to § 245a.2(u)(2)(ii).

In his papers, Mr. Kashannejad argues that, even though § 245a.2(u)(2)(ii) now allows for deportation proceedings to be initiated before termination of LTR status, Defendants should be estopped from using that regulation against him based on INS's conduct in the prior case he initiated against the agency in 1995. As discussed above, in that case, INS represented to Judge Legge that it was "required to terminate, as a condition precedent to the commencement of deportation proceedings, the lawful resident status of an alien who commits a deportable offense after he has acquired temporary residence in this country." Docket No. 30 (Ex. F) (Reply at 3). INS made this representation even though § 245a.2(u)(2)(ii) had gone into effect several months earlier. Moreover, Judge Legge appears to have relied on the representation – at least in part – in dismissing the case.

Mr. Kashannejad's argument here is essentially one of judicial estoppel. Judicial estoppel typically applies when (1) a party's later position is clearly inconsistent with its original position; (2) when the party has successfully persuaded the court of the earlier position; and (3) when allowing the inconsistent position would allow the party to derive an unfair advantage or impose an unfair detriment on the opposing party. *See United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008); *see also Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1249 (2010).

1    In a supplemental brief permitted by the Court, Defendants protest that the Court may not
2 entertain any estoppel argument because of 8 U.S.C. § 1252(g), which provides in relevant part that
3 "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision
4 or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal
5 orders against any alien under this chapter." 8 U.S.C. § 1252(g). Defendants point out that, in
6 *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594 (2002), the Ninth Circuit construed § 1252(g) "to include
7 not only a decision in an individual case *whether* to commence, but also *when* to commence, a
8 proceeding." *Id.* at 599 (emphasis in original) (citing *Richards-Diaz v. Fasano*, 233 F.3d 1160, 1165
9 (9th Cir. 2000) (stating that "[w]e are in no position to review the timing of the Attorney General's
10 decision to 'commence proceedings'"), *vacated on other grounds by Fasano v. Richards-Diaz*, 533
11 U.S. 945 (2001)).

12    The Court does not find Defendants' position persuasive. In *Jimenez*, the alien had presented
13 herself to the INS prior to the effective date of the Illegal Immigration Reform and Immigrant
14 Responsibility Act of 1996 ("IIRIRA"),[6] hoping to avail herself of the pre-IIRIRA remedy of
15 suspension of deportation. INS, however, did not commence proceedings against her until after the
16 effective date of the IIRIRA, and she was ultimately found removable. *See id.* at 597. The alien
17 sought judicial review of the agency decision, arguing that INS should have started deportation
18 proceedings against her immediately upon becoming aware of her illegal presented in the United
19 States. It was in this context that the Ninth Circuit stated that there was no jurisdiction to consider
20 the alien's petition for relief because § 1252(g) covered both a decision whether to commence but
21 also when to commence. *See id.* at 599.

22    *Jimenez* is distinguishable from the instant case because INS's decision to commence
23 removal proceedings – both the "whether" and the "when" – had already been made by the time that

---

[6] Congress enacted IIRIRA "to expedite the physical removal of those aliens not entitled to admission to the United States." *Coyt v. Holder*, 593 F.3d 902, 906 (9th Cir. 2010); *see also Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 494 (9th Cir. 2007) (en banc) (stating that "Congress' ambitious purpose behind IIRIRA was to enable the prompt admission of those who are entitled to be admitted, [and] the prompt exclusion or removal of those who are not") (internal quotation marks omitted).

the alien sought judicial review. Here, there has been no decision about removal proceedings as of yet, either the "whether" or the "when." This factual difference is material.

More specifically, the difference is material because Mr. Kashannejad is invoking estoppel based on governmental action that took place *prior* to any decision about commencing removal proceedings. The Ninth Circuit has indicated that, in such a circumstance, § 1252(g) would not be a jurisdictional bar to judicial review. In *Young Sun Shin v. Mukasey*, 547 F.3d 1019 (9th Cir. 2008), the alien was put into removal proceedings, and an immigration judge ultimately found her to be removable. One of the arguments that the alien made to the immigration judge was that the government had "unclean hands" in the removal proceeding because she had obtained her fraudulent green card from a government employee who used his position to sell such cards to aliens. The immigration judge declined to address the argument. *See id.* at 1023. On appeal to the Ninth Circuit, the alien argued again that the government should be estopped from removing her based on the improper actions of the government employee. The Ninth Circuit noted:

> Under 8 U.S.C. § 1252(g), we have no "jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . ." However, we have jurisdiction over petitioner's equitable estoppel claim because it arises from actions taken by a corrupt government employee *prior to any decision* made by the Attorney General to commence proceedings against her.

*Id.* at 1023-24 (emphasis added) (citing *Wong v. United States*, 373 F.3d 952, 965 (9th Cir. 2004) (holding that "§ 1252(g) does not bar review of actions that occurred prior to any decision to 'commence proceedings'")). While the instant case raises the prospect of judicial estoppel rather than equitable estoppel, the basic point underlying *Young Sun Shin* is that review of government action taken *prior* to a decision to commence proceedings is not jurisdictionally barred by § 1252(g). The Court, therefore, may review the merits of Mr. Kashannejad's judicial estoppel argument.

A district court has discretion in deciding whether judicial estoppel is applicable. *See Estate of Shapiro v. United States*, 634 F.3d 1055, 1057 (9th Cir. 2011) (noting that a district court's application of judicial estoppel is reviewed for abuse of discretion). As stated above, judicial estoppel generally applies when (1) a party's later position is clearly inconsistent with its original position; (2) when the party has successfully persuaded the court of the earlier position; and (3)

15

1  when allowing the inconsistent position would allow the party to derive an unfair advantage or
2  impose an unfair detriment on the opposing party. *See Ibrahim*, 522 F.3d at 1009; *see also Reed*
3  *Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1249 (2010). Judicial estoppel may be applied
4  regardless of whether a party's stated position is an expression of intent, a statement of fact, or a
5  legal assertion. *See Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997).

6      In the instant case, the first two factors weigh in favor of Mr. Kashannejad. On the first
7  factor, Defendants' position that it may initiate deportation proceedings without first terminating
8  LTR status is clearly inconsistent with INS's original position. On the second factor, Judge Legge
9  relied on the representation by INS in dismissing Mr. Kashannejad's case. The problem for Mr.
10 Kashannejad is that the third factor – *i.e.*, whether allowing the inconsistent position would allow
11 Defendants to derive an unfair advantage or impose an unfair detriment on Mr. Kashannejad – does
12 not weigh in his favor. Contrary to what Mr. Kashannejad suggests, Defendants would not derive an
13 unfair advantage if allowed to rely on the regulation now (*i.e.*, to deport prior to termination of LTR
14 status). More than fifteen years have passed since INS's original statement to Judge Legge and,
15 clearly, the regulation expressly permits initiation of removal proceedings prior to termination of
16 LTR status. For the same reasons, Mr. Kashannejad would not suffer an unfair detriment.[7]

17     Because, for the reasons discussed above, the Court finds judicial estoppel inapplicable, the
18 Court denies Mr. Kashannejad's request for an order barring Defendants (or another federal agency)
19 from initiating deportation proceedings against him prior to termination of his LTR status.

### III. CONCLUSION

21     For the foregoing reasons, the Court denies Defendants' motion to dismiss for lack of
22 jurisdiction. In addition, the Court grants in part and denies both Mr. Kashannejad's motion for
23 partial summary judgment and Defendants' cross-motion. As discussed above, Mr. Kashannejad's
24 motion is granted – and Defendants' cross-motion denied – to the extent he asks for permission to
25 return to the United States. Mr. Kashannejad's motion is denied – and Defendants' cross-motion

---

[7] The Court acknowledges that, in *New Hampshire v. Maine*, 532 U.S. 742 (2001), the Supreme Court applied judicial estoppel even though the original position taken by the party to be estopped had taken place twenty-five years earlier. However, there, judicial estoppel was based on what was essentially a factual position that had been taken, and not a legal opinion, as here.

granted – to the extent he asks for an order barring Defendants (or another federal agency) from initiating deportation proceedings against him until after the LTR termination proceedings have been completed.

Based on Defendants' representation that, to enable Mr. Kashannejad's return to the United States, they will need to coordinate with multiple federal agencies or entities, the Court shall give Defendants thirty days to provide Mr. Kashannejad with the necessary papers to return to the United States or to otherwise effectuate his return to the United States. Defendant may, if necessary, petition for additional time, upon a showing of good cause. The Court notes that this order does not require Mr. Kashannejad to return to the United States – *i.e.*, if he so chooses, he may decide not to return to the United States and defend the LTR termination proceedings from abroad.

This order disposes of Docket Nos. 16 and 26.

IT IS SO ORDERED.

Dated: October 18, 2011

_____
EDWARD M. CHEN
United States District Judge