United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMSHID S. KASHANNEJAD,

    Plaintiff,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,

    Defendants.
_____/

No. C-11-2228 EMC

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S REQUEST FOR CLARIFICATION; AND ORDER TO SHOW CAUSE**

**(Docket Nos. 80-81)**

    Plaintiff Jamshid S. Kashannejad has filed a motion in which he asks the Court (1) to find Defendants in noncompliance with the Court's order of January 23, 2012, and (2) to reconsider its prior rulings in light of the recent Supreme Court decision *Vartelas v. Holder*, 182 L. Ed. 2d 473 (2012). Having considered the parties' briefs, the Court hereby **GRANTS** in part and **DENIES** in part Mr. Kashannejad's request for relief.

**I. DISCUSSION**

A.   *Vartelas*

    The Court considers first whether the Supreme Court's decision in *Vartelas* affects the rulings previously made by this Court in this litigation.

    The plaintiff in *Vartelas* was an alien who became a lawful permanent resident in 1989. In 1994, he pleaded guilty to a felony. *See id.* at 481. At the time of his plea, a lawful permanent

resident convicted of "a crime of moral turpitude could, under the *Fleuti* doctrine,[1] return from brief trips abroad without applying for admission to the United States." *Id.* at 483.

In 1996, however, Congress enacted the Illegal Immigration Reform and Responsibility Act ("IIRIRA"). Under the Act, a lawful permanent resident who had such a conviction and who made a brief trip abroad could now be regarded, upon his return, as seeking an admission into the United States and therefore denied reentry. *See id.*; *see also* 8 U.S.C. § 1101(a)(13)(C)(v) (providing that "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien [*e.g.*] has committed an offense identified in section 212(a)(2) [8 U.S.C. § 1182(a)(2)], unless since such offense the alien has been granted relief under section 212(h) or 240A(a) [8 U.S.C. § 1182(h) or 1229b(a)]").

Several years after the enactment of the IIRIRA, the plaintiff made a brief trip abroad to Greece. Upon his return to the United States, he was treated as an inadmissible alien pursuant to § 1101(a)(13)(C)(v) of the IIRIRA. On appeal to the Supreme Court, the plaintiff argued that the new requirements of the IIRIRA could not be retroactively imposed on him. The Supreme Court agreed:

> Neither [the plaintiff's] sentence, nor the immigration law in effect when he was convicted and sentenced, blocked him from occasional visits to his parents in Greece. Current § 1101(a)(13)(C)(v), if applied to him, would thus attach "a new disability" to conduct over and done well before the provision's enactment.

*Vartelas*, 182 L. Ed. 2d at 485-86.

As reflected by the above summary, *Vartelas* has no impact on the Court's prior rulings in the case at bar. At no point did the Court make any holding that Mr. Kashannejad should be denied reentry into the United States on the basis of a prior conviction. In fact, the Court has held that Mr. Kashannejad *should* be allowed to return to the United States under the modified *Fleuti* doctrine as codified in 8 U.S.C. § 1255a(b)(3)(A). *See* Docket No. 40 (Order at 9).

---

[1] In *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), the Supreme Court held that "an innocent, casual, and brief excursion by a [lawful permanent] resident alien outside this country's borders may not have been 'intended' as a departure disruptive of his resident alien status and therefore may not subject him to the consequences of an 'entry' into the country on his return." *Id.* at 462.

1    To the extent Mr. Kashannejad argues that, consistent with *Vartelas*, 8 C.F.R. §
2 245a.2(u)(2)(ii) cannot retroactively be imposed on him,[2] the Court notes that it made no rulings as
3 to whether or not the regulation may be imposed on him. In fact, the Court has held that it was not
4 appropriate for it "to opine on the applicability of the regulation because, should a removal order
5 actually be issued, judicial review would not lie with this Court." Docket No. 50 (Order at 5) (citing
6 8 U.S.C. § 1252(a)(5)); *see also* Docket No. 53 (Order at 2) (stating that, "to the extent Mr.
7 Kashannejad believes, *e.g.*, that 8 C.F.R. § 245a.2(u)(2)(ii) may not be retroactively applied to him,
8 that is an argument that should be made to the Ninth Circuit on review, not to this Court (assuming
9 that Mr. Kashannejad is subject to a removal order and that he seeks judicial review of that order)").
10 In his papers, Mr. Kashannejad contends that "this [C]ourt does have jurisdiction to apply the law
11 that governs here," but the authority he cites does not support that proposition.
12   Accordingly, to the extent Mr. Kashannejad has asked the Court to reconsider its rulings
13 based on *Vartelas*, the request for relief is hereby denied.

14 B.   Compliance with Court Order

15   Mr. Kashannejad contends that Defendants have failed to comply with the Court's order of
16 January 23, 2012, because (1) the transportation letter issued by Defendants lists Dubai as the
17 departure city and (2) the transportation letter includes the following statement to the Customs and
18 Border Protection ("CBP") Officer at the airport in Los Angeles:

> This document was issued to allow the bearer of this document, who appears to be an alien who was granted temporary residence status under Legalization in 1988 and has never had that status terminated to board a transportation company and make application for admission to the United States at the Los Angeles (LAX) port of entry.
>
> This letter in no way constitutes an obligation on the United States Government to admit the alien. The CBP Officer at the Port of

---

[2] Under the regulation, an alien may be put into removal proceedings prior to termination of his temporary resident status. The regulation went into effect in May 1995. Prior to the regulation, the Board of Immigration Appeals had held in *Matter of Medrano*, 20 I. & N. 216 (1990), that "the termination process will *precede* the commencement of deportation proceedings against an alien." *Id.* at 218 (emphasis added). *See generally* Docket No. 40 (Order at 4-5) (discussing regulation and *Medrano*). In their papers, Defendants argue that Mr. Kashannejad's "circumstances do not involve a retroactive application of the regulation because at least two of [his] predicate convictions became final after the regulation went into effect." Opp'n at 6.

>Entry has the sole and exclusive authority to admit the above named alien. . . .

Docket No. 80 (Mot., Ex. 1) (transportation letter).

Mr. Kashannejad's first argument is without merit. The Court did not express any opinion in its January 23 order as to whether the transportation letter could include a departure city and, if so, which city. Nor has the Court in any of its other orders expressed an opinion on these issues.

However, Mr. Kashannejad's second argument is meritorious. In its January 23 order, the Court clearly stated that, "under *Fleuti*, Mr. Kashannejad never needed to be 'admitted' into the United States (*i.e.*, there was no need for an entry into the country) because he never 'departed' in the first place." Docket No. 63. The note to the CBP Officer in the transportation letter fails to take this into account. In their papers, Defendants argue that the note to the CBP Officer "is merely boilerplate language that is routinely used in transportation letters." Opp'n at 3. However, Defendants have offered no evidence that that is the case. The Mulraney declaration, for example, does not state such. While the Mulraney declaration does state that, "[i]f Mr. Kashannejad arrives at LAX, CPB will admit him as a returning lawful temporary resident pursuant to this Court's order," Mulraney Decl. ¶ 4, the inclusion of the note to the CBP in the transportation letter poses a significant risk that Mr. Kashannejad will not be admitted by the CBP.

Accordingly, the Court hereby orders that Defendants issue a new transportation letter to Mr. Kashannejad. The new transportation letter shall not include the above note to the CBP. Rather, the new transportation letter shall include the following note to the CBP: "CBP is instructed to admit Mr. Kashannejad as a returning lawful temporary resident, if and when he arrives at LAX, pursuant to the order of the United States District Court of the Northern District of California. A copy of the Court order is attached to this letter as is a declaration from CBP Section Chief Bruce R. Mulraney, certifying that, '[i]f Mr. Kashannejad arrives at LAX, CBP will admit him as a returning lawful temporary resident . . . ." The transportation letter shall have as attachments: (1) a copy of this order and (2) the Mulraney declaration.

In addition, the Court now rules that the transportation letter shall include (in addition to information previously required by the Court) the departure city. The parties should meet and

confer to determine whether the departure city identified in the transportation letter should be Dubai, Tehran, or another city.

The new transportation letter shall be ready for Mr. Kashannejad to pick up from the U.S. embassy in Dubai no later than June 3, 2012, which appears to be the date that Mr. Kashannejad's tourist visa expires.

Finally, the Court hereby orders Richard Vinet, the official identified by Defendants as the official responsible for compliance with the Court's order of January 23, *see* Docket No. 63 (Order at 2-3) (requiring Defendants to identify a specific official responsible for compliance); Docket No. 69 (Vinet Decl. ¶ 2) (identifying himself as the official), to **show cause** as to why he should not be held in contempt for the failure to comply with the Court's January 23 order. In addition, the Court orders Defendants to **show cause** as to why they should not be ordered to pay the reasonable travel cost for Mr. Kashannejad to pick up the new transportation letter from Dubai. The responses to the order to show cause shall be filed no later than two weeks from the date of this order. Mr. Kashannejad may file any reply to Mr. Vinet and/or Defendants' response to the order to show cause within one week thereafter.

## II. CONCLUSION

For the foregoing reasons, the Court hereby grants in part and denies in part Mr. Kashannejad's request for clarification. The Court further issues an order to show cause as described above to Mr. Vinet and Defendants.

This order disposes of Docket Nos. 80 and 81.

IT IS SO ORDERED.

Dated: April 30, 2012

_____
EDWARD M. CHEN
United States District Judge